# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRYSTAL FUENTES,<br>      Plaintiff<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>      Defendant | No. 23 CV 399<br><br>Judge Jeremy C. Daniel |

## ORDER

Defendant JPMorgan Chase Bank, N.A.'s motion to dismiss [24] is granted in part and denied in part. The Court denies the motion as to Plaintiff Crystal Fuentes' Electronic Funds Transfer Act and breach of contract claims (Counts I and III). The Court grants the motion as to Fuentes' conversion claim (Count II). The defendant shall file its answer to the second amended complaint by January 31, 2024.

## STATEMENT[1]

At all relevant times, Plaintiff Crystal Fuentes had a checking account with Defendant JP Morgan Chase Bank, N.A. that was subject to Chase's Deposit Account Agreement ("DAA"). (SAC ¶¶ 6, 17.)[2] In 2019, a non-party lender initiated collection proceedings against Fuentes in the Circuit Court of Cook County. (*Id.* ¶ 8.) Fuentes did not appear in the proceedings and the lender obtained a default judgment against her. (*Id.* ¶¶ 8, 10.) In 2022, the lender served Chase with a citation to discover assets to enforce the default judgment and obtain a lien on her account. (*Id.* ¶¶ 8–9.) Fuentes subsequently appeared in the collection proceedings and moved to vacate the judgment for lack of service. (*Id.* ¶ 10.) She also sought a statutory exemption under Illinois law that would exempt up to $4,000 from the judgment-lien on her Chase account. (*Id.* ¶10 (citing 735 ILCS 5/12-1001).) On January 4, 2023, the Circuit Court granted her exemption claim and entered an order stating, "[a]mounts up to $4,000

---

[1] The factual background is taken from the second amended complaint and is accepted as true for purposes of the motion to dismiss. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021). When ruling on a motion to dismiss, the Court may consider documents attached to the complaint, documents central to the claim and referred to therein, and information that is properly subject to judicial notice. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

[2] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

held by Chase Bank subject to this Order shall be returned to Crystal Fuentes." (*Id.* ¶ 11; *see also* R. 20-1, Ex. A, at 7.)

In the days that followed, Fuentes provided Chase with the exemption order and made several calls to its legal department regarding the release of her funds. (SAC ¶¶ 12–13.) The representatives with whom Fuentes spoke, however, told her that Chase would not release any funds in her account, notwithstanding the exemption order. (*Id.* ¶ 13.) On January 20, 2023, Fuentes attempted to withdraw $20.00 from her account using an ATM, but the transaction was denied. (*Id.* ¶ 15; *see also* R. 20-1, Ex. C, at 9.) About two and a half weeks later, Chase's legal department instructed Fuentes to visit a Chase branch to obtain the release of her funds. (*Id.* ¶¶ 16–17.) Fuentes did so the next day with the exemption order in hand. (*Id.* ¶ 17.) The branch manager told Fuentes that the order was not sufficient for him to release her funds, but that he would "escalate" her request. (*Id.*) On February 14, 2023, approximately six weeks after the exemption order was entered, Chase sent Fuentes a check for the balance in her account. (*Id.* ¶ 20.) A few months later, on April 27, 2023, the Circuit Court vacated the lender's default judgment against Fuentes. (*Id.* ¶ 11.)

Fuentes now brings suit against Chase under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* (*See* SAC, Count I.) She also asserts state-law claims for conversion and breach of contract.[3] (*Id.*, Counts II and III.) Chase moves to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6). (R. 24.)

A motion to dismiss tests the sufficiency of a claim, not the merits of a case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

First, Fuentes alleges that Chase violated the EFTA, 15 U.S.C. § 1593h, when it denied her ATM withdrawal on January 20, 2023, notwithstanding the Circuit Court's exemption order. (SAC ¶¶ 24–25.) Chase moves to dismiss this claim on grounds that its actions were consistent with the terms of the DAA and, thus, it cannot be held liable under the EFTA. (R. 25 at 5–8.)

---

[3] The Court has subject matter jurisdiction over Fuentes' EFTA claim under 28 U.S.C. § 1331, and it may exercise supplemental jurisdiction over Fuentes' state-law claims under 28 U.S.C. § 1367(a).

The EFTA "protects consumers by providing 'a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328 (7th Cir. 1997) (quoting 15 U.S.C. § 1693(b)). Under the EFTA, the term "electronic fund transfer" means any transfer of funds initiated through an electronic terminal, such as an ATM, that orders, instructs, or authorizes a financial institution to debit or credit an account. 15 U.S.C. § 1693a(7). The EFTA holds financial institutions liable "for all damages proximately caused by . . . the financial institution's failure to make an electronic fund transfer, in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer." 15 U.S.C. § 1693h(a)(1). A financial institution is exempted from liability under this subsection where "the funds are subject to legal process or other encumbrance restricting such transfer." 15 U.S.C. § 1693h(a)(1)(B).

In support of its argument for dismissal, Chase points to various provisions in the DAA, a copy of which it attached to its motion to dismiss, to show that it acted "in accordance with the terms and conditions of [Fuentes'] account" when it denied her ATM transaction. (R. 25 at 6–8; *see also* R. 25-1, Ex. A, at 4–31.) Generally, in ruling on a motion to dismiss, the Court may not consider materials outside the pleadings without converting the motion to one for summary judgment. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). An exception to this rule lies for documents attached to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to [her] claim." *Id.* The Court finds that the DAA meets the exception's requirements, but is not persuaded at this stage that its contents are fatal to Fuentes' EFTA claim.

True, the DAA provides that Chase may refuse withdrawals for various reasons, including legal proceedings, (R. 25-1, Ex. A, at 25); but it also advises account holders of what to do if they wish to challenge legal proceedings affecting their accounts. (*Id.* at 27.) Indeed, the DAA specifically contemplates that account holders may seek exemptions of certain funds from pending legal proceedings, such as the one that Fuentes obtained here. (*See id.* ("You agree that it is your responsibility to . . . dispute any issue related to the Legal Process, *and/or seek to claim any additional exemption of funds related to the Legal Process not otherwise applied by us.*") (emphasis added).) The Court is, thus, not persuaded that the DAA "directly obviates [Fuentes'] allegations" in the second amended complaint, as Chase argues. (R. 25 at 8.) Rather, taking Fuentes' allegations as true—that Chase denied her the ability to withdraw funds notwithstanding the court-ordered exemption—she has plausibly stated a claim under the EFTA. Chase's motion to dismiss Count I is therefore denied.

Next, Chase moves to dismiss Fuentes' state-law claims for breach of contract and conversion. (R. 25 at 9–11.) Fuentes contends that Chase's refusal to release funds exempted from the judgment-lien constituted a breach of the DAA, (SAC ¶¶ 31–32),

3

and that the bank converted the funds in her account when it refused to comply with the exemption order. (*Id.* ¶ 28.)

Turning first to Fuentes' breach of contract claim, a plaintiff looking to state a colorable breach of contract claim under Illinois law must allege four elements: "(1) the existence of a valid enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019).

In support of dismissal, Chase once again argues that the DAA expressly permits it to refuse withdrawals, payments, or transfers of funds to or from Fuentes' account. (R. 25 at 11.) But this argument fails for the same reasons discussed above. Though the DAA permits the withholding of funds subject to legal proceedings, it also contemplates instances in which certain funds may be exempted from said proceedings. (R. 25-1, Ex. A, at 25, 27.) Fuentes alleges that she obtained such an exemption. The extent to which this court-ordered exemption implicated Chase's obligations under the DAA is not something that can be decided on a motion to dismiss. For now, the Court finds that Fuentes' allegations are sufficient to plausibly state a breach of contract claim. Chase's motion to dismiss Count III is denied.

As for Fuentes' state-law conversion claim, she must allege that "(1) [she] had a right to the property at issue; (2) [she] had an 'absolute and unconditional' right to the immediate possession of the property; (3) [she] made a demand for possession; and (4) the [defendant] wrongfully and without authorization assumed control, dominion, or ownership over the property." *Reynolds v. Skyline Real Est. Ltd.,* No. 22 C 1241, 2023 WL 4899827, at *9 (N.D. Ill. Aug. 1, 2023) (quoting *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016)). When, as is the case here, money is at issue, "an action for conversion may be maintained 'where the converted funds are capable of being described, identified, or segregated in a specific manner.'" *Wendorf v. Landers*, 755 F. Supp. 2d 972, 980–81 (N.D. Ill. 2010) (quoting *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 287 (Ill. 2004)).

Chase argues that Fuentes' conversion claim must be dismissed for three reasons: (1) the claim is barred under Illinois' economic loss doctrine; (2) the restriction on Fuentes' funds was authorized under the DAA; and (3) the compliant is devoid of any allegations that Chase converted the funds for its own use. (R. 25 at 9–10.) Because the Court agrees that the claim is barred under Illinois' economic loss doctrine, it does not reach Chase's other arguments.

Illinois' economic loss doctrine, also known as the *Moorman* doctrine, "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). Where a conversion claim is alleged, the applicability of the doctrine depends on the source of duty owed to the plaintiff by the defendant. *ACW Flex Pack LLC v. Wrobel*,

4

No. 22 C 6858, 2023 WL 4762596, at *13 (N.D. Ill. July 26, 2023). If the defendant breached a duty to the plaintiff that arises from a contract, then the conversion claim may not proceed. *Id.* "But if the contract did not contemplate the situation in which the conversion arose, then the *Moorman* doctrine would not stand in the way of the conversion claim." *Id.* (internal quotation marks and citation omitted).

Here, Fuentes' conversion claim is grounded in conduct that she alleges was covered by the DAA—that is, Chase's obligation to release funds to her that were subject to the exemption order. Indeed, the allegations giving rise to her conversion claim mirror those made in support of her breach of contract claim. (*Compare* SAC ¶ 28 ("Chase converted the funds in Plaintiff's account by refusing to comply with the [exemption] order."), *with id.* ¶ 32 ("Chase breached the agreement by not complying with the [exemption] order.").) In her response, Fuentes does not explain how or why the allegations supporting her conversion claim do not flow from Chase's duties under the DAA; rather, she argues that conversion and other intentional torts are not subject to the *Moorman* doctrine. (R. 27 at 8.) "Although the Illinois Supreme Court has not confronted this precise issue, it has explicitly stated that *Moorman* applies with equal force to cases where a defendant's conduct is negligent and those where, like here, the conduct is alleged to have been intentional." *Wrobel*, 2023 WL 4762596, at *15 (citing *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 185 (Ill. 1986)). And courts in this district have declined to find that an exception to the *Moorman* doctrine exists under Illinois law for intentional torts. *See id.* Because Fuentes' conversion claim stems from the same alleged duties giving rise to her breach of contract claim, it is barred under the *Moorman* doctrine. *See, e.g., St George Invs. LLC v. QuamTel, Inc.*, No. 12 C 9186, 2014 WL 812157, at *9–10 (N.D. Ill. Mar. 3, 2014) (dismissing a conversion claim under *Moorman* where the plaintiff brought breach of contract claims arising from the same conduct). Count II is therefore dismissed.

Date: 1/3/2024

JEREMY C. DANIEL
United States District Judge